IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TONI ANN BROOKS                           :                    CIVIL ACTION

         v.                           :

JO ANNE B. BARNHART, Commissioner  :
of the Social Security Administration                    NO.  04-1918

## REPORT AND RECOMMENDATION

THOMAS J. RUETER                                          May 24, 2005
United States Magistrate Judge


        Plaintiff, Toni Ann Brooks, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act ("Act").  Plaintiff filed a motion for summary

judgment seeking (1) reinstatement of the Commissioner's favorable decision on plaintiff's July

31, 2000 SSI application; and (2) remand of plaintiff's original SSI claim for the closed period of

February 26, 1998 through June 30, 2000.  The Commissioner filed a Motion to Remand

recommending that the entire case be remanded for further consideration.  Plaintiff objected in

part to the Commissioner's motion.  (Doc. No. 16.)  For the reasons set forth below, this court

recommends that the Commissioner's Motion to Remand be granted, and plaintiff's motion for

summary judgment be granted in part and denied in part, and that this matter be remanded for

further proceedings consistent with this court's Report and Recommendation.

I.      **FACTS AND PROCEDURAL HISTORY**

Plaintiff protectively filed her application for SSI benefits on February 26, 1998 claiming an inability to work since September 6, 1997 due to asthma and the effects of musculoskeletal and connective tissue injuries resulting from a gunshot wound ("1998 Application"). (R. 11, 46.) The 1998 Application was denied on initial review on April 22, 1998, and on reconsideration on July 7, 1998. (R. 48-51, 53-56.) Plaintiff requested an administrative hearing which was held on February 10, 1999 before Administrative Law Judge ("ALJ") James T. Kelly. (R. 22-45, 57.) Plaintiff was not represented by counsel at the administrative hearing. (R. 24.) In a decision dated February 22, 1999, the ALJ denied plaintiff's 1998 Application. (R. 8-20.) The Appeals Council denied plaintiff's request for review. (R. 4-6.)

On July 31, 2000, plaintiff, with the assistance of counsel, filed a second SSI application ("2000 Application"). (Pl.'s Br. Supp. Summ. J. Ex. A.) Plaintiff alleged disability due to depression, chronic bronchitis, and a gunshot wound to the lower spine. Id. It was concluded that her symptoms medically equaled Listing 12.05C, and she was found disabled as of July 1, 2000. Id.

Plaintiff's counsel filed in this court an appeal from the denial of the 1998 Application. See Brooks v. Massanari, No. 00-CV-4581. Plaintiff requested that the case be remanded for reconsideration of the denial of benefits for the closed period of February 26, 1998 (the protective filing date of the 1998 Application) through June 30, 2000 (the day before the July 1, 2000 disability onset date for the 2000 Application). (Pl.'s Br. Supp. Summ. J. at 3 and 3 n.1.)

The Commissioner filed a motion for remand, to which plaintiff consented.  In the motion for remand, the Commissioner stated that "[r]emand for further administrative action is . . . appropriate in order to consider whether the Commissioner's subsequent allowance of benefits to plaintiff impacts the period at issue in this case."  Brooks v. Massanari, No. 00-CV-4581, Report and Recommendation at 2 (E.D. Pa. June 26, 2001), report approved and adopted by Order dated July 19, 2001.  On December 19, 2001, the Appeals Council notified plaintiff that it intended to reopen the favorable decision she received on her 2000 Application due to an "error of law" and consolidated the claims.  (R. 261, 246.)  On January 6, 2003, a different ALJ, Richard A. Kelly, conducted a supplemental administrative hearing.  (R. 264-305.)  ALJ Kelly issued an unfavorable decision denying plaintiff's consolidated claims.  (R. 243-55.)  The Appeals Council denied plaintiff's request for review.  (R. 214-16.)  This appeal followed.

Plaintiff filed a motion for summary judgment asking this court to reinstate the favorable decision on the 2000 Application and to remand the unfavorable decision on the 1998 Application for the closed period of February 16, 1998 through June 30, 2000.  (Doc. No. 11.)  The Commissioner filed a Motion to Remand (Doc. No. 15) stating the case should be remanded to the Appeals Council which would direct the ALJ to include in the record the report of Emil Sfedu, M.D., evaluate Dr. Sfedu's assessment, and address the rationale for the weight assigned to this medical opinion.  (Def.'s Mot. to Remand at 1-2.)  Plaintiff objects in part to the Commissioner's Motion to Remand emphasizing that remand is appropriate only for the closed period of February 16, 1998 through June 30, 2000 with respect to the 1998 Application, and that the previous favorable decision on the 2000 Application should be reinstated.  (Doc. No. 16.)

II.   **STANDARD OF REVIEW**

   The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  <u>Jesurum v. Sec'y of United States Dep't of Health and Human Serv.</u>, 48 F.3d 114, 117 (3d Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  <u>Jesurum</u>, 48 F.3d at 117.  This court may not "weigh evidence or substitute its conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 924 (1993).  As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1191 (3d Cir. 1986), <u>cert. denied</u>, 482 U.S. 905 (1987).  <u>See</u> <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002) (court examines the ALJ's conclusions as to the claimant's residual functional capacity "with the deference required of the substantial evidence standard of review").

   To be eligible for SSI, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability

and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. §

423(d)(5). A claimant satisfies this burden by showing an inability to return to former work.

Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof

shifts to the Commissioner to show that given the claimant's age, education, and work

experience the claimant has the ability to perform specific jobs that exist in the national

economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential

evaluation process established by the Department of Health and Human Services to determine

whether a person is "disabled." This process requires the Commissioner to consider, in

sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an

impairment which meets or equals the requirements of a listed impairment; (4) can perform past

relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his

age, education, and work experience. 20 C.F.R. § 416.920.

## III.   DISCUSSION

### A.   Post-Remand Supplemental Hearing and the ALJ's Decision

At the post-remand supplemental administrative hearing on January 6, 2003, the

ALJ, at the direction of the Appeals Council, consolidated plaintiff's two SSI applications. (R.

246.) At the supplemental administrative hearing, Richard Saul, M.D., testified as a medical

expert with respect to plaintiff's psychiatric/psychological impairments. (R. 290-96.) The ALJ

5

concluded that plaintiff suffered from major depression/dysthymic disorder and polysubstance abuse, which were severe impairments.  (R. 249.)  The ALJ further determined, however, that plaintiff's impairments did not meet or equal the criteria for Listings 12.04 and 12.09.  (R. 249-51.)  The ALJ concluded that plaintiff's substance abuse was a contributing factor material to the determination that she was disabled, and that plaintiff was not disabled absent the substance abuse.  (R. 253.)

With respect to plaintiff's physical impairments, the ALJ found that she suffers from "status-post gunshot wound" with complaints of residual left leg weakness and paresthesias, and asthma.  (R. 249.)  The ALJ limited plaintiff to a wide range of sedentary exertional activities, further limited, due to her emotional problems, to work requiring only "simple, routine and repetitive work instructions."  (R. 252.)

Plaintiff's counsel contends that after the close of the supplemental hearing, the ALJ informed counsel that he would schedule another hearing to evaluate "a potential musculoskeletal listing 'equivalency' issue," and would permit plaintiff to update the treatment records.  (Pl.'s Br. Supp. Summ. J. at 19.)  Counsel states that plaintiff was prejudiced because the ALJ never scheduled this hearing and plaintiff was not permitted to supplement her treatment records.  Id.

In his decision dated February 26, 2003, the ALJ concluded that plaintiff was not entitled to SSI for any of the time periods covered by the two applications because she retained the residual functional capacity ("RFC") to perform sedentary work which existed in the regional and national economies.  (R. 254.)  The ALJ concluded, however, that plaintiff could not perform a full range of sedentary work.  Id.  The ALJ made the following findings of fact:

6

1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b).

3.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 416.927).

6.    The claimant has the following residual functional capacity to perform a wide range of sedentary exertional activities.  Claimant is limited in that, due to her emotional problems, she requires simple, routine and repetitive work instructions.

7.    The claimant has no past relevant work (20 C.F.R. § 416.965).

8.    The claimant is a 'younger individual between the ages of 45 and 49' (20 C.F.R. § 416.963).

9.    The claimant has 'a limited education' (20 C.F.R. § 416.967).

10.    The claimant has the residual functional capacity to perform a significant range of sedentary work (20 C.F.R. § 416.967).

11.    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.18 as a framework for decision-making, and the testimony of the vocational expert there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as products inspector, of which there are 195 regionally and 13,000 nationally; and charge account/credit card clerk, of which there are 400 regionally and 22,000 nationally.

12.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).

(R. 254-55.)

**B.      Emil Sfedu, M.D. – Consultative Evaluation and Medical Source Statement Dated October 20, 2000**

On October 20, 2000, Dr. Sfedu performed a consultative "internal medicine disability examination" of plaintiff.[1]  (Pl.'s Mem. Supp. Summ. J. Ex. C.)  Physical examination revealed an "area of hypoesthesia in the lower extremity from the inguinal area down," and "weakness in the left lower extremity as tested by the dorsiflexion of the great toe."  Id.  Deep tendon reflexes were noted to be "2+" throughout, including the left lower extremity.  Id.  Straight leg raising was positive on the left side at approximately fifty degrees.  Plaintiff's range of motion was decreased in the lumbosacral area; plaintiff could bend forward seventy out of ninety degrees.  Id.  Plaintiff raised several issues in this matter regarding Dr. Sfedu's opinion.

**i.      Plaintiff's Ability to Perform a Full Range of Sedentary Exertional Activities**

In a Medical Source Statement dated October 20, 2000, Dr. Sfedu opined that plaintiff occasionally could lift and carry two to three pounds.  Id.  Plaintiff could stand and walk one hour or less and could sit one to two hours in an eight hour workday.  Id.  Plaintiff could perform no postural activities, and never could bend, kneel, stoop, crouch, balance or climb.  Id.  Plaintiff had no limitation in her ability to operate hand or foot controls (other than the limitations in her ability to lift and carry), and no other limitations in physical functions such as reaching and handling.  Id.  Dr. Sfedu imposed numerous environmental restrictions and concluded that plaintiff should avoid the following:  poor ventilation, heights, moving

---

[1]      The transcribed report of Dr. Sfedu's physical examination of plaintiff and his Medical Source Statement, though discussed by the ALJ in his decision, do not appear in the record.  Plaintiff has attached these documents as Exhibit C to her Motion for Summary Judgment.

machinery, temperature extremes, chemicals, wetness, dust, fumes, odors, gases, and humidity. Id.

In his February 26, 2003 decision, the ALJ addressed Dr. Sfedu's October 20, 2000 consultative evaluation and concluded that Dr. Sfedu's opinion that plaintiff was unable to perform a full range of sedentary exertional activities was a "low estimate" of plaintiff's abilities. (R. 248-49.)  As apparently conceded by the Commissioner, who filed a motion to remand so that the ALJ can further consider Dr. Sfedu's opinions, the ALJ failed to properly consider Dr. Sfedu's Medical Source Statement.  Dr. Sfedu did not opine, as the ALJ stated, that plaintiff could perform a full range of sedentary exertional activities.  Dr. Sfedu limited plaintiff's ability to sit, stand and walk, in total, to up to three hours in an eight hour day.  Dr. Sfedu also limited plaintiff to lifting and carrying two to three pounds occasionally.  Social Security Ruling ("SSR") 96-9p provides that a full range of sedentary work requires the ability to lift ten pounds at a time, and to sit about six hours in an eight hour workday.

Dr. Sfedu's opinion not only precludes plaintiff from performing a full range of sedentary activities, it also precludes plaintiff from performing any gainful work activity since she cannot work a full eight hour day.  In order to be found not disabled, plaintiff must be able to work on a "regular and continuing basis."  See 20 C.F.R. § 416.945(b) and (c).  Two Social Security Rulings define "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, 96-9p.  See also Wallace v. Apfel, 1998 WL 967376, at *4 (E.D. Pa. Nov. 24, 1998) (to be found not disabled, ALJ must find claimant able to work on a "regular and continuing basis").  On remand, the ALJ shall consider and weigh Dr. Sfedu's

evaluation and opinion, and shall reconsider his RFC determination for plaintiff in light of all the evidence of record.

### ii.      Additional Medical Evidence

When discussing Dr. Sfedu's evaluation, the ALJ stated as follows:

> My real question on that is if it's as bad as that examination [Dr. Sfedu's] shows, she probably meets the listing at 1.04.  It's just has that persisted.  That's what we need to see.  The real question is are we going to get the evidence.  If we don't get the evidence from Dr. Mangroni or some other physicians that have done the physical exam, that's why I'm hoping the fractured ankle [sic] would have done a good physical exam.  I mean if they just bound her ankle up and told her to go on her way, we're not going to know anything.  If they did a good physical exam, we'll know if she still has deficits on the left side.  We just have to see.  But basically I'm just using, it really is a hypothetical at this point for sedentary plus the lack of concentration.

(R. 297.)  This statement by the ALJ raises two considerations.  First, it supports plaintiff's claim that the ALJ stated an intention to schedule a supplemental hearing to gather additional evidence regarding plaintiff's physical impairments.  Id.  Although Dr. Sfedu provides evidence in this regard, the ALJ stated the need for further evidence regarding plaintiff's physical impairments.  On remand, plaintiff shall be permitted to submit supplemental medical evidence.

Second, as discussed below, the ALJ acknowledged that Listing 1.04 is relevant to this plaintiff.

### iii.      Listing 1.04

In the above quoted passage, the ALJ stated that if plaintiff's physical condition were as limited as Dr. Sfedu's evaluation showed, she "probably" would meet the requirements of Listing 1.04.  The ALJ does not address Listing 1.04 in his decision.  Evidence relevant to Listing 1.04 is neuro-anatomic distribution of pain, limitation of motion in the spine, motor loss

accompanied by sensory or reflex loss, and a positive straight-leg raising test.  Dr. Sfedu's report revealed some evidence of each of these factors.  Plaintiff reported constant pain in the lumbosacral area, which was worse in the supine position and while walking.  (Pl.'s Br. Supp. Summ. J. Ex. C at 2.)  Physical examination revealed deep tendon reflexes to be "2+."  Id.  An area of hypoesthesia was present in the left lower extremity from the inguinal area down.  Id.  The left lower extremity also exhibited weakness.  Id.  Straight leg raising was positive on the left side at approximately fifty degrees.  Id.  Range of motion in the lumbosacral area was decreased.  Id.

Despite acknowledging that plaintiff may have satisfied the requirements under Listing 1.04 at the supplemental hearing, the ALJ failed to discuss this Listing in his decision.  A review of Dr. Sfedu's opinion reveals that Listing 1.04, as the ALJ initially suggested, is relevant to plaintiff's disability claim.  On remand, after considering and weighing Dr. Sfedu's report and opinion, and the other medical evidence in the record, the ALJ shall consider whether plaintiff's impairments, alone or in combination, meet or equal the requirements of Listing 1.04, in addition to any other Listings relevant to the instant case.

### C.    Plaintiff's Mental Impairments – Substance Abuse

The medical evidence of record supports the ALJ's conclusion that plaintiff has a history of polysubstance abuse, most notably, cocaine use.  (R. 247, 249.)  The ALJ concluded that plaintiff suffered from major depression/dysthymic disorder and polysubstance abuse, which were severe impairments.  (R. 249.)  The ALJ further determined, however, that plaintiff's impairments did not meet or equal the criteria for Listings 12.04 and 12.09.  (R. 249-51.)  The ALJ found that plaintiff's substance abuse "is a contributing factor material to the determination

11

that she is disabled."  (R. 247.)  The ALJ found that plaintiff is not disabled in the absence of

substance abuse.  (R. 253.)  More specifically, the ALJ concluded as follows:

> I also note that counsel asked the vocational expert whether jobs exist in the national economy for an individual if one [sic] who wouldn't be able to follow even simple work instructions on a regular basis.  The vocational expert testified no jobs existed in the national economy for such an individual.  However, I reject the hypothetical on the basis that such a situation would only arrive, in this case, if claimant was continuing to use substances (Cocaine).  Thus claimant would be found disabled if her continued substance abuse were considered.  However, since claimant is found not disabled in the absence of substance abuse, it is found that such substance abuse is material to the determination that she is disabled.  Without such consideration of substance abuse claimant is not disabled as noted above.

Id.

In the case of an individual who suffers from alcoholism or drug addiction, the

Act requires that "[a]n individual shall not be considered to be disabled for purposes of this

subchapter if alcoholism or drug addiction would (but for this subchapter) be a contributing

factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §

423(d)(2)(C), 1382c(a)(3)(J).  The regulations explain that substance abuse is a material or

contributing factor if there would be no disability absent the substance abuse.  20 C.F.R. §

416.935.  In making this determination, the disability must be evaluated independently of the

substance abuse.  Id.  If the claimant's limitations are not disabling after eliminating the

substance abuse related factors, the substance abuse is a material factor and the claimant is not

eligible for benefits.  Id.  However, if the limitations remain disabling without the substance

abuse, the claimant is eligible for benefits.  Id.  To assist in the implementation of the

regulations, the Commissioner issued Emergency Teletype No. 96, which states in part:

> Since a finding that [drug or alcohol dependency] is material will be made only
> when the evidence establishes that the individual would not have been disabled if
> he/she stopped using drugs/alcohol, the DE [disability examiner] will find that
> [drug and alcohol dependency] is not a contributing factor material to the
> determination of disability.
> . . .
> When it is not possible to separate the mental restrictions and limitations imposed
> by [drug or alcohol dependency] and the various other medical disorders shown
> by the evidence, a finding of "not material" would be appropriate.

Emergency Teletype No. 96, Aug. 30, 1996.  Thus, if a claimant's physical or mental limitations

cannot be distinguished or separated from those caused by substance abuse, the substance abuse

alone is an insufficient basis to justify denial of benefits.  See Bryant v. Barnhart, 2003 WL

22245092, at *2 (E.D. Pa. July 30, 2003) (same, quoting Emergency Teletype No. 96).  See also

Knox v. Barnhart, 60 Fed. Appx. 374, 376-77 (3d Cir. 2003) (non-precedential opinion) (same).

At the supplemental administrative hearing, Richard Saul, M.D., testified as a

medical expert with respect to plaintiff's psychiatric/psychological impairments.  (R. 290-96.)

Dr. Saul testified that plaintiff's psychological limitations absent her substance abuse problems

would not meet or equal the requirements under Listing 12.04.  (R. 292-93.)  Dr. Saul, on

questioning from plaintiff's counsel, testified as follows:

Q.   [S]witching gears just a little bit and giving the 12.04 [Affective Disorders], 12.09
     [Substance Addiction Disorders] combination restrictions as opposed to the 12.04
     lone restrictions, the contrast, is that contrast based on specific evidence, or it is
     kind of an educated guess?

A.   There is some educated guess to that.  The records are not very specific, period.

Q.   Okay.  Does that mean there are no records?  Is there any evidence in the record,
     for example, that you see that would indicate a protracted period of drug
     abstinence?

A.   No.

13

Q.      So in order to make it kind of a definitive separation, would you need, what period of abstinence would you need to make an absolute comparison, do you think?

A.      The records are not complete.  Their records are very spotty.  I'm going on the records that we have.  I need records.

ALJ     I think his question was if the person stopped abusing.  Is that what you are asking?

Q.      Yes.  I - -

ALJ     When would you have like a baseline developed?

Q.      - -  guess enough period of abstinence to make a really accurate assessment.

A.      Just in general, about six months.

(R. 295.)

        In the conceded absence of sufficient medical records, Dr. Saul was unable to point to any evidence supporting his conclusion that plaintiff would not be disabled in the absence of substance abuse.  The ME admits that his conclusion is in part an "educated guess."  On remand, the ALJ shall elicit further testimony from a Medical Expert regarding plaintiff's substance abuse and whether evidence exists linking the abuse to the disability.  Absent evidence of such a link, the abuse is not a material factor precluding plaintiff from an award of benefits.  Moreover, in light of the dearth of records available for Dr. Saul to consider, to the extent there are additional medical records relevant to this determination and for the relevant time period, plaintiff shall supplement the record.[2]

---

        [2]      This case is distinguishable from Bryant v. Barnhart, 2003 WL 22245092 (E.D. Pa. July 30, 2003), in which the court reversed and awarded benefits in a case where an independent medical examiner testified that he could not separate plaintiff's mental limitations from her substance abuse.  Id. at *2.  In Bryant, the medical examiner testified that he could not conclude that the claimant's mental impairment was independent from his substance abuse or

D.     **Combination of Impairments**

Plaintiff also contends that the ALJ failed to consider all of her impairments,

physical and mental, in combination.  (Pl.'s Br. Supp. Summ. J. at 21-23.)  See 20 C.F.R. §

416.923 ("If we do find a medically severe combination of impairments, the combined impact of

the impairments will be considered throughout the disability determination process.").  "The ALJ

must consider the combined effect of multiple impairments, regardless of  their severity."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d. 112, 122 (3d Cir. 2000).

Here, the ALJ concluded that plaintiff suffered from the following severe

impairments:  "status-post gunshot wound, with complaint of residual left leg weakness an[d]

paresthesias, asthma, major depression/dysthymic disorder and polysubstance abuse."  (R. 249.)

After a careful review of the ALJ's decision, it is unclear whether the ALJ considered the

combined impact of plaintiff's physical and mental impairments on plaintiff's ability to work.

The ALJ stated as follows in his decision regarding the combined effect of plaintiff's

impairments:

---

whether it was substance induced.  Id.  Notwithstanding this testimony, the ALJ concluded that
the claimant was not disabled because his substance abuse was material to his depression.  The
court found that the ALJ failed to follow the directive in the Emergency Teletype and that the
absence of any evidence linking the addiction to the disability compelled a finding that the
claimant was disabled.  Id. at *3.  In the instant matter, the ME testified that limitations from
plaintiff's mental impairments would be less absent the substance abuse.  In making this
conclusion, however, the ME acknowledged a lack of medical records and that his conclusion
was partially an educated guess.  Since the record is not clear, this case is appropriate for remand.
See Podedworny v. Harris, 745 F.2d 210, 224 (3d Cir. 1984) ("A reversal, as opposed to a
remand, is in order only where a fully developed administrative record demonstrates that the
claimant is clearly entitled to benefits, and thus a new administrative hearing would serve no
useful purpose.") (concurrence).  On remand, after the medical records have been supplemented,
the ALJ may further explore the basis of his conclusions regarding plaintiff's mental
impairments.

I also asked Medical Expert, Dr. Saul to determine whether claimants' [sic] other impairments are severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Dr. Saul testified that claimant's history is replete with extensive notations of Cocaine usage.

Dr. Saul compared claimant's condition with those found at Listings 12.04 and 12.09 to determine whether he impairment's [sic], singly or jointly, meet or equal any impairment or combination listed in Appendix 1, Subpart P, Regulation No. 4.
. . .
The claimant does not have an impairment that meets or equals the criteria of any listed impairment.

(R. 249, 251.)

The ALJ's discussion of Dr. Saul's testimony and conclusions in his decision focused on plaintiff's mental impairments.  (R. 249-51.)  It is unclear whether Dr. Saul included plaintiff's physical impairments in his calculus.  Id.  For example, Dr. Saul makes no mention of plaintiff's claims of pain.  Moreover, during his testimony, Dr. Saul stated that he evaluated the criteria under the mental health listings from "purely psychiatric reasons."[3]  (R. 293.)  The record does not reveal that Dr. Saul considered the evidence in the record regarding the impact of plaintiff's pain on her depression, or concentration problems.  For example, Batsheva Ben-Amos, M.D., in a Consultative Psychological Evaluation dated October 7, 2000, determined that plaintiff's "pace depends on whether she has pains." (Pl.'s Br. Supp. Summ. J. Ex. D).  On

_____

[3]       Discussing Listings 12.04 ands 12.09, the ME stated as follows:

In terms of restrictions of activities of daily living, and I think that considering the coke and alcohol as a significant contributing factor, but with everything restrictions of activities of daily living would be moderate.  Difficulties in maintaining concentration, persistence and pace is moderate.  Episodes of decompensation, none from purely psychiatric reasons and the C criteria are not met.

(R. 292-93.)

remand, after considering and weighing the opinion of Dr. Sfedu, the ALJ shall reconsider the combined effect of all of plaintiff's impairments and whether they, singly or in combination, meet or equal any of the listed impairments.

In fulfilling his responsibility to decide whether a listing is met or equaled <u>see</u> 20 C.F.R. § 416.927(e), SSR 96-6p, the ALJ, at step three of the sequential analysis, must compare the medical evidence in the record to a list of impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 416.920(d).  An ALJ must obtain an updated medical opinion from a medical expert when "symptoms, signs, and laboratory findings reported in the record suggest that a judgment of equivalence may be reasonable."  <u>See</u> SSR 96-6p.  The ruling "gives the ALJ broad discretion in determining whether to call a medical expert to testify."  <u>Johnson v.</u> <u>Barnhart</u>, 66 Fed. Appx. 285, 2003 WL 202111, at *3 (3d Cir. 2003) (non-precedential opinion).

In the instant matter, the ALJ utilized a medical expert, Dr. Saul, who addressed the limitations related to plaintiff's psychological impairments.  As stated above, there is no evidence that Dr. Saul considered the impact of the combination of the limitations of all of plaintiff's impairments, physical and mental, when addressing the Listings.  Based upon the evidence in the record, a finding of medical equivalence may be reasonable.  As such, on remand, the ALJ shall retain a medical expert for the purpose of making an equivalency finding regarding plaintiff's physical and psychological impairments, singly and in combination.

### E.   **Plaintiff's Complaints of Pain**

Plaintiff contends that the ALJ's RFC determination fails to adequately account for plaintiff's complaints of pain.  (Pl.'s Br. Supp. Summ. J. at 40-43.)  Case law has stated that a claimant's testimony regarding subjective complaints is entitled to great weight, particularly

when supported by competent medical evidence.  Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).  See also Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (subjective complaints must be given "serious consideration").

In his decision, the ALJ acknowledged plaintiff's reports of "chronic and diffuse pain," and that she has difficulty with activities such as walking, standing, stooping, bending and lifting.  (R. 251.)  Plaintiff also complained of "chronic low back and leg pains," which reduced her ability to concentrate and to function.  Id.  The ALJ concluded that the medical evidence supports some, but not all, of plaintiff's allegations of limitations due to her symptoms.  (R. 251-52.)

Dr. Sfedu's evaluation, which precludes plaintiff from performing any postural activities, provides at least some support for plaintiff's complaints about the limitations imposed by her symptoms.  Similarly, Dr. Ben-Amos, who performed a consultative psychological examination, opined that plaintiff's pain impacts her "pace," and that "she uses cocaine to deal with her pain."  While the ALJ discussed Dr. Ben-Amos' opinion in his decision, see R. 249, the ALJ did not address the physician's conclusions regarding plaintiff's pain and the limitations caused by the pain.  On remand, after the ALJ considers and weighs Dr. Sfedu's opinion, the ALJ shall reconsider his credibility determination in light of all of the evidence of record.

## F.   Hypothetical to the VE

Plaintiff also asserts that the hypothetical to the VE was defective in that it failed to include all of the limitations caused by plaintiff's impairments.  The law is clear that the ALJ must include in the hypothetical to the VE all of a claimant's limitations which are supported by the medical record.  Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999); Chrupcala v. Heckler,

829 F.2d 1269, 1276 (3d Cir. 1987).  A VE's testimony in response to a hypothetical "that fairly

set forth every credible limitation established by the physical evidence," may be relied upon by

the ALJ as substantial evidence, whereas VE testimony in response to a faulty hypothetical does

not constitute substantial evidence.  Plummer, 186 F.3d at 431.

Upon remand, after the ALJ considers and weighs all of the evidence of record,

the ALJ shall submit a new hypothetical question to the VE, as needed, to reflect all of the

limitations caused by plaintiff's impairments as supported by the medical record.

### G.    Reversal v. Remand

In her motion for summary judgment plaintiff seeks (1) reinstatement of the

Commissioner's favorable decision on plaintiff's 2000 Application; and (2) remand of plaintiff's

1998 Application for the closed period of February 26, 1998 through June 30, 2000.  Plaintiff

contends that the prior determination that plaintiff was disabled under Listing 12.05 (Mental

Retardation) was not an error a law and that the award of benefits should be reinstated.

The law is clear that the reversal of an unfavorable determination and the award of

benefits "should be made only when the administrative record of the case is fully developed and

when substantial evidence on the record as a whole indicates that the claimant is disabled and

entitled to benefits."  Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984).  See also

Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (same).

In his decision, the ALJ addressed the error of law that caused plaintiff's prior

award of benefits to be reversed as follows:

> The Appeals Council noted that benefits were awarded based upon claimant's
> application filed July 31, 2000, when a determination made on December 1, 2000
> (based upon an evaluation dated November 28, 2000) a [sic] finding that

claimant's impairments met a Listing of Impairments at 12.05C.  However, Dr.
Saul stated that, based upon his review of the record, claimant's low I.Q. scores
were secondary to depression which in turn was caused by continued
polysubstance dependence (Cocaine).  Therefore, he found that claimant's low
intellectual functioning level should not be considered under Listing 12.05, but
upon the above analysis.  I concur in this analysis, as it is consistent with the
objective evidence of record and upon the trerating [sic] physician's notes and
records.

(R. 251.)  At the supplemental hearing, counsel and the ALJ engaged in a discussion regarding

whether an error of law had occurred when it was previously determined that plaintiff met the

requirements of Listing 12.05 (Mental Retardation).  The following colloquy occurred:

> ALJ:          Well, [they] were only focusing on the IQ number and whether or not they
>               were impacted by any drug or alcohol which, of course, can't be included.
>
> COUNSEL:      Except, Your Honor, we have no way of really knowing whether the IQ
>               numbers are diminished because of the depression alone or the depression
>               in combination of the drugs and alcohol as Dr. Saul stated.
>
> ALJ:          Right.  But that doesn't mean they're valid.  We . . .
>
> COUNSEL:      Well, it means they could potentially be valid, Your Honor, not for the
>               purposes of - -
>
> ALJ:          I can't . . . use something that could potentially be valid.  It's either got to
>               be valid or not valid.

(R. 301.)  The ALJ then asked Dr. Saul, the Medical Expert, whether plaintiff's adaptive

functioning ability was in the mentally retarded level.  Dr. Saul responded, "No."  (R. 303.)  Dr.

Saul explained that without any of the other conditions, plaintiff clinically has a higher IQ.  Id.

Dr. Saul based this conclusion upon plaintiff's ability to speak well and to convey her medical

history at the hearing.

          This colloquy reveals that the record is not fully developed on the question of

whether plaintiff's impairments meet or equal the requirements of Listing 12.05.  As noted

above, counsel admitted at the hearing that it was unclear if the IQ numbers attributed to plaintiff were valid.  (R. 301.)  The record does not contain substantial evidence indicating that plaintiff is disabled under Listing 12.05 and entitled to benefits.  On remand, if counsel continues to contend that plaintiff has satisfied the requirements under Listing 12.05, the ALJ shall consider this Listing along with all of the evidence in the record.

The Third Circuit has decided to forego a remand and award benefits in cases in which "the Commissioner has previously had ample opportunity to develop the record and has failed repeatedly to explain or support its determination with substantial evidence, or where substantial evidence exists in the record to support an award of benefits." <u>Eary v. Halter</u>, 2001 WL 695045, at *6 (E.D. Pa. June 18, 2001) (citing cases).  In the instant matter, the ALJ failed to properly consider all of the medical evidence in the record.  That failure impacted, or may impact, the ALJ's determinations regarding plaintiff's RFC, credibility, and disability.  Those decisions are reserved for the ALJ, not this court.  As such, further consideration by the ALJ will serve a useful purpose.  Furthermore, the record is incomplete.  Dr. Saul noted the lack of medical records in his testimony as Medical Expert, and plaintiff expressed a desire to submit additional medical records concerning plaintiff's physical impairments.  For these reasons, the court recommends that the case be remanded in whole, and not remanded in part and reversed in part.

## IV.   <u>CONCLUSION</u>

After a careful and thorough review of all the evidence in the record, and for all the reasons stated above, this court concludes that there is not substantial evidence to support the ALJ's determination that plaintiff retains the RFC to perform work which exists in the economy,

and is not disabled.  Thus, this court recommends that this case be remanded pursuant to the

parties' motions, and pursuant to sentence four of 42 U.S.C. § 405(g), to further develop the

record in accordance with this Report and Recommendation.  Accordingly, this court respectfully

makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 24th day of May, 2005, upon consideration of plaintiff's motion

for summary judgment, the Commissioner's motion for remand, and plaintiff's opposition

thereto, it is respectfully recommended that plaintiff's motion for summary judgment be

GRANTED IN PART and DENIED IN PART, and the Commissioner's motion for remand be

GRANTED, and judgment be entered in favor plaintiff.[4]  This court further recommends that this

case be remanded for further proceedings consistent with this Report and Recommendation.


BY THE COURT:



_____

THOMAS J. RUETER
United States Magistrate Judge



_____

[4]        Since this court recommends that the case be remanded on grounds raised in
plaintiff's motion for summary judgment that are in addition to those raised in the
Commissioner's remand motion, the court recommends that plaintiff's motion for summary
judgment be granted and judgment be entered in plaintiff's favor.  See Shalala v. Schaefer, 509
U.S. 292, 296-07 (1993) (Sentence four of 42 U.S.C. § 405(g) authorizes a district court to enter
a judgment "with or without" a remand order, not a remand order "with or without" a judgment.).
See also Kadelski v. Sullivan, 30 F.3d 399, 401 (3d Cir. 1994).